JUDE G. GRAVOIS, Judge.
 

 12The plaintiffs in this wage dispute action, Gary Bell, Nick Cammarata and Mike DeHarde (“plaintiffs”), are former employees of the defendants, Rimkus Consulting Group, Inc. and Rimkus Consulting Group, Inc. of Louisiana (“defendants”). In their pleadings, plaintiffs claim that they are due additional bonuses wages from defendants for 2005 and 2006 under defendants’ Profit Sharing Plan, and since such additional bonus wages were not timely paid, they are also entitled to penalties and attorneys’ fees under the Louisiana Wage Claim Act, LSA-R.S. 23:631,
 
 et seq.
 
 A
 
 *448
 
 bench trial on the merits of this matter ensued. At the conclusion of plaintiffs’ case, the trial court granted defendants’ Motion for Involuntary Dismissal as to plaintiffs’ 2006 claims. At the conclusion of the trial, the trial court ruled in favor of defendants, dismissing plaintiffs’ 2005 claims. Plaintiffs have appealed this judgment. Since plaintiffs have not appealed the dismissal of their 2006 claims, this appeal only involves plaintiffs’ 2005 claims. For the reasons that follow, we affirm.
 

 |
 
 ¿FACTS AND TESTIMONY ADDUCED AT TRIAL
 

 According to the evidence admitted at trial, defendants’ Profit Sharing Plan (“the Plan”) provides for a “bonus pool” of money for defendants’ employees equal to 20% of defendants’ pre-tax net operating income. This “bonus pool” of money was available for distribution to employees of those of defendants’ various divisions and branches that reached a certain profit level. Section F of the Plan sets forth the ranges of suggested distribution of this “bonus pool” of money to defendants’ employees, to-wit:
 

 • Division Manager- — No less than 15%, no more than 50% of total division bonus.
 

 • Professional Billing Staff — No less than 30%, no more than 60% of total division bonus.
 

 • Marketing Staff — No less than 10%, no more than 30% of total division bonus.
 

 • Administrative and Clerical Staff — No less than 5%, no more than 15% of total division bonus.
 

 The Plan further provides that these ranges of suggested distribution “may be adjusted to allow for individual office staffing.”
 

 Plaintiff, Gary Bell, testified that he was the Central Region Manager for defendants and worked out of defendants’ New Orleans branch office. Mr. Bell explained that the Plan, which was put into place in 2000, was used by defendants to recruit new employees and to motivate employees to work. Mr. Bell testified that he was told by his supervisor, Curtis Brown, that defendants decided to decrease the amount of the 2005 “bonus pool,” resulting in $500,000 being taken out of the 2005 “bonus pool” and placed into the 2006 “bonus pool.” Mr. Bell further explained that had this $500,000 not been removed from the 2005 “bonus pool,” the New Orleans branch would have had an additional $83,156 available to pay bonuses to the employees of that branch for 2005. Mr. Bell calculated that [^because the bonus of $130,000 that he actually received for 2005 represented 30% of the 2005 bonus money employees of the New Orleans branch actually received, he was due an additional 2005 bonus of $24,946.80 (being 30% of the $83,156 New Orleans branch bonus money shortfall).
 

 On cross-examination, Mr. Bell acknowledged that because audits of defendants’ financial records done by an outside firm delayed the determination of the yearly “bonus pool” called for under the Plan, employees actually received their bonuses during the subsequent calendar year. In other words, he would not receive his 2005 bonus until sometime during 2006.
 

 Mr. Bell further testified that, in accordance with the portion of Section F of the Plan quoted above, his bonus as Division Manager would be between 15% and 50% of the total New Orleans Division bonus money available. Mr. Bell stated that his 2005 actual bonus was set by Curtis Brown and the company’s board of directors. As the Division Manager, Mr. Bell determined the actual bonuses to be paid to Mr. Cam-marata and Mr. DeHai-de, subject to approval of the company’s board of directors.
 
 *449
 
 These plaintiffs fell under the Professional Billing Staff designation in Section F of the Plan, calling for their bonuses to be between 30% and 60% of the total New Orleans Division bonus money available. Mr. Bell stated that he assigned bonuses based on the number of hours the employees worked.
 

 Plaintiff, Nick Cammarata, testified that he was a Central Regional Property Manager for defendants. He stated that defendants introduced the bonus plan as an additional way for employees to earn money. Mr. Cammarata testified that he actually received a bonus of $29,000 for 2005 and that he filed this action seeking to recover his percentage of the bonus money that was withheld from the New Orleans branch’s “bonus pool.”
 

 | ,-,On cross-examination, Mr. Cammarata testified that he fell under the Professional Billing Staff designation in Section F of the Plan, calling for his bonus to be between 30% and 60% of the total New Orleans Division bonus money available. He acknowledged that even if he knew the exact amount of money the New Orleans office had available for payment of bonuses, he “still would be unable to calculate” his particular bonus. Mr. Cammarata admitted that “we never discussed what I was going to get,” and he never knew “how much his bonus would be.”
 

 Plaintiff, Michael DeHarde, testified that he worked as an engineer for defendants. He stated that he actually received a bonus of $28,000 for 2005. He sought to recover his share of the bonus money that was left out of the 2005 “bonus pool” for the New Orleans office. Mr. DeHarde reasoned that since the bonus he actually received for 2005 was six per cent of the total 2005 bonus money actually received by the New Orleans office, he was entitled to that same percentage of the money that was taken out of the 2005 New Orleans “bonus pool.”
 

 On cross-examination, Mr. DeHarde admitted that he did not know exactly “what [his] bonus was going to be,” but he knew that Mr. Bell made bonus recommendations that had to be approved by the company’s officers and board of directors. He acknowledged that individual bonus percentages were discretionary.
 

 Curtis Brown, senior vice president of defendants, testified that the Plan called for 20% of defendants’ pre-tax profit to go into the “bonus pool.” He explained that divisional bonuses are calculated according to the profits made by those individual offices. Mr. Brown testified that the bonuses were not always distributed according to the Plan because the Plan was a guideline and the payment of bonuses was discretionary.
 

 JjMr. Brown admitted that $500,000 that would have gone into the company’s 2005 “bonus pool” was removed and put into the company’s 2006 “bonus pool.” He explained that this money was removed from the 2005 “bonus pool” because the company had at that time large expenses for legal fees and millions of dollars in accounts receivables that were outstanding for 120 days or longer. Mr. Brown stated that the calculations for the “bonus pool” were based on earnings, not on amounts collected by the company.
 

 Mr. Brown further testified that he and another officer of defendants determined Mr. Bell’s bonus for 2005, stating that the bonus could have been more or less than the percentages provided for in the Plan. He calculated Mr. Bell’s actual 2005 bonus to be 29.7% of the New Orleans branch’s “bonus pool,” which was within the percentage range called for by the Plan for Mr. Bell. Mr. Brown stated that bonuses for Mr. Cammarata and Mr. DeHarde were set by Mr. Bell and these were not
 
 *450
 
 changed by the company’s board of directors. According to Mr. Brown, the 2005 bonuses that Mr. Cammarata and Mr. De-Harde actually received were also within the percentage ranges called for in the Plan for them. Mr. Brown testified that because payment of the bonuses in question was discretionary, the placement of additional amounts in the company’s 2005 “bonus pool” would not nécessarily have resulted in plaintiffs receiving more money for 2005.
 

 Mr. Brown disputed plaintiffs’ contention that if the $500,000 had not been removed from the company’s 2005 “bonus pool,” the New Orleans branch would have received an additional $83,156 available for 2005 bonus distributions. According to Mr. Brown, Mr. Bell took some of the money that was intended for the New Orleans branch and “shifted it outside the region to another location” because Mr. Bell wanted to compensate employees from some other regions that |7had assisted the New Orleans branch during 2005. Mr. Brown also stated that plaintiffs’ calculations included a mathematical error.
 

 After a lengthy trial, the trial court rendered judgment in favor of defendants finding that although the bonus payments for 2005 sought by plaintiffs were wages to which plaintiffs were entitled, plaintiffs had failed to prove that the 2005 bonus payments they actually received were insufficient and that they would have been entitled to an additional percentage of the funds allegedly withheld from the 2005 “bonus pool” by defendants. Plaintiffs have appealed that judgment.
 

 ARGUMENTS OF THE PARTIES
 

 Plaintiffs contend that because defendants withheld a portion of the 2005 bonus money that was supposed to be paid to the New Orleans branch employees under the Plan, they did not receive the full 2005 bonus wages that they were entitled to under the Plan. In support of this position, plaintiffs cite the following portions of the Plan:
 

 Those divisions and branch offices which make an annual pre-tax operating income PROFIT ... shall receive PROFIT SHARING BONUS PAYMENTS, which in the aggregate, are equal to Twenty percent (20%) of the Pre-Tax, Pre-Bonus NET OPERATING INCOME of the corporation,....
 

 Those division and branch offices which make a PROFIT for the year shall receive PROFIT SHARING BONUS PAYMENTS (equal in total to 20% of the Corporate Pre-Tax, Pre-Bonus NET OPERATING INCOME) in proportions based upon each of their relative contributions....
 

 An additional ANNUAL CORPORATE BONUS will be paid to all eligible employees based on remaining Corporate Pre-tax Net Operating Income....
 

 Based on this language, plaintiffs contend that the bonuses called for in the Plan are mandatory, rather than discretionary. While plaintiffs acknowledge that there is some discretion in determining who bonuses are distributed to within the New | ^Orleans branch, the Plan does not provide for any discretion with respect to the amount of bonus money to be made available for distribution to the New Orleans office employees. Plaintiffs contend there is nothing under the Plan that allows defendants to change the amount of money that is required to be distributed to the company’s divisions and branches. Plaintiffs argue that if bonus payments under the Plan are discretionary, as defendants have contended, then there would have been no reason for defendants to have amended the Plan in 2006 to make contributions for bonus payments discretionary by the company.
 

 
 *451
 
 Plaintiffs further argue that based on documents provided by defendants through discovery and admitted into evidence at trial, the New Orleans office was due $505,396 for 2005 bonuses under the Plan, yet only $422,240 was made available for 2005 bonuses for the New Orleans office, leaving a shortfall of $83,156. Plaintiffs calculate the additional amounts due each of them individually based on the percentages of the actual bonuses they respectively received for 2005 as follows: Mr. Bell claims that he is owed an additional $24,946 for 2005, while the other two plaintiffs claim they are each entitled to an additional $4,949 for 2005.
 

 In response, defendants contend that as a closely held corporation, they could administer, modify, or terminate their own profit sharing plan at any time in order to comply with their fiduciary duties to the corporation in order to maintain financial stability of the company. Defendants concede that had money not been removed from the bonus pool for 2005, the New Orleans branch would have received an additional $83,156 available for payment of bonuses to New Orleans branch employees. Defendants argue, however, that plaintiffs want the Court to assume that these additional funds would have been distributed to plaintiffs in accordance with the same percentages as the bonuses actually received by | ^plaintiffs. Defendants contend that although plaintiffs might have respectively received some additional bonus had the extra funds been made available for bonus distribution to New Orleans branch employees, based on the evidence introduced, there is no way to calculate plaintiffs’ extra bonus amounts with the degree of certainty required by LSA-R.S. 23:631. Defendants conclude that discretionary payments of money that are not reasonably capable of being ascertained by certain mathematical calculation cannot be considered as wages under the statute. Additionally, defendants contend that because the written terms of plaintiffs’ respective employment agreements did not include the right to receive bonuses, plaintiffs had no enforceable legal right to bonuses under either contract law or pursuant to LSA-R.S. 23:361.
 

 ANALYSIS AND FINDINGS
 

 Plaintiffs filed this action under LSA-R.S. 23:631 A(l)(b) which provides in pertinent part:
 

 Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.
 

 The trial court judgment herein states, in pertinent part:
 

 [T]he court finds that the bonus payments for the year 2005 demanded by plaintiffs were “wages” to which the plaintiffs were clearly entitled. However, the court further finds that the plaintiffs failed to prove that the amounts of bonus payments which were received by the plaintiffs for the 2005 year were insufficient and that plaintiffs would have been entitled to an additional certain percentage of the amount of funds allegedly withheld from defendants.
 

 |1ftThe judgment also finds that plaintiffs’ actual bonuses were not awarded as a percentage; rather, given that plaintiffs’ bonus payments were awarded in $1,000 increments, they were awarded as a dollar amount. The judgment concludes that plaintiffs did not carry their burden of
 
 *452
 
 proving they were entitled to an additional percentage of the bonus funds allegedly withheld from the New Orleans branch employees.
 

 While the trial court judgment does not specifically state that the bonus payments claimed by plaintiffs were wages under LSA-R.S. 23:631, because of the fact that this action was brought pursuant to that statute, we can only infer that the trial court made such a determination. Defendants urge this Court in brief to find that the bonus payments claimed by plaintiffs in this case do not constitute wages under LSA-R.S. 23:631. Although this contention by defendants may have some merit under the law, because defendants did not file their own appeal nor answer plaintiffs’ appeal, this Court is without authority to consider this issue. A party who has not appealed nor filed an answer to an appeal may not seek modification of that judgment.
 
 Matthews v. Consolidated Companies, Inc.,
 
 95-1925 (La.12/8/95), 664 So.2d 1191,
 
 reh’g denied
 
 95-1925 (La.1/26/96), 666 So.2d 662. To modify this judgment in favor of the non-appealing defendant would be contrary to Louisiana law. La. C.C.P. Art. 2133. Accordingly, the only issue before this Court is whether plaintiffs have proven that they are entitled to the additional amounts claimed for 2005 under the Plan.
 
 [1]
 

 To recover wages and penalties under LSA-R.S. 23:631 and 23:632 for an employer’s failure to pay wages owed to a former employee, the employee must |nprove the wages were due and owing, that demand for payment was made at the place where he was usually paid, and that the employer failed to pay following the demand.
 
 Thomas v. DeJohn’s Plumbing and Heating Co., Inc.,
 
 380 So.2d 161, (La.App., 1979). The burden of proof rests upon the employee to show by a preponderance of the evidence the facts which establish his claim for the award of penalties.
 
 Harrison v. First National Funeral Homes, Inc.,
 
 244 So.2d 102 (La.App. 3 Cir.1971),
 
 writ not considered,
 
 258 La. 345, 246 So.2d 195 (1971).
 

 Our review of the record indicates that the trial court correctly found that plaintiffs failed to prove the first essential element, i.e., that the wages claimed were due and owing. The record is replete with testimony as to how the amount of bonus wages received by each individual branch was calculated and the range of suggested percentages to be paid to these plaintiffs under the Plan. We agree with the trial court’s conclusion that plaintiffs’ actual bonuses were awarded in fixed dollar amounts rather than pursuant to percentages. Plaintiffs received bonuses in the amounts of $130,000, $28,000, and $29,000, respectively. While Mr. Bell testified that he awarded bonuses based on the amount of hours individual employees worked, there was no testimony as to how those hours were used in determining what percentage of the bonus money available was due to each employee. Likewise, although Mr. Brown testified that he and another officer determined Mr. Bell’s 2005 bonus, there was no testimony as to how the percentages provided for in the Plan were used to arrive at the amount received by Mr. Bell. There was no evidence to support
 
 *453
 
 plaintiffs’ claim that had the New Orleans branch received the additional funds they allege were due, they individually would have actually received larger bonuses. In fact, there was uncontroverted testimony by Mr. Brown that Mr. Bell transferred some of the money allocated to the New Orleans branch to employees of other branches to | ^compensate employees outside of the New Orleans branch for work performed following Hurricane Katrina. Additionally, the wording of the Plan itself with regard to how the money received by a particular branch is divided among the employees of that particular branch states that the percentages may be adjusted depending on “individual office staffing.” This would allow the percentages awarded to individual employees to be above or below the suggested percentages stated in the Plan. In sum, we find that there was simply no convincing proof that plaintiffs are owed additional money from defendants for 2005.
 

 Thus, given the testimony and evidence presented, we find no error in the tidal court’s ruling that plaintiffs failed to prove that the 2005 bonuses plaintiffs actually received from defendants would have been larger had the additional bonus funds in question been made available for New Orleans branch bonus distributions.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court in favor of defendants dismissing plaintiffs’ claims is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Plaintiffs urge this Court to follow the ruling of the trial court in
 
 Kaplon v. Rimkus Consulting Group, Inc. of Louisiana,
 
 2008-795, rendered by the Civil District Court for the Parish of Orleans. In
 
 Kaplon,
 
 the trial court held that the defendant improperly withheld earned bonus wages from its employees for the year 2005. While the facts of
 
 Kaplon
 
 do appear to be very similar to the instant case, this Court is unaware of the proof presented by the plaintiff to the court in
 
 Kaplon,
 
 thus we decline to rely on the holding in
 
 Kaplon
 
 to reverse the findings of the trial court in the instant matter.