LILJEBERG, J.
*1040 Plaintiff appeals a trial court judgment rendered in favor of defendant, dismissing plaintiff's claims for unpaid wages, penalty wages, attorney fees, and costs. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Rick Calamia, Jr., was employed by defendant, Core Laboratories, LP ("Core Lab"), from January 25, 2016 through December 2, 2016. After his employment was terminated, Mr. Calamia asserted that he was owed compensation for various unpaid wages. Core Lab disputed that any wages remained unpaid and declined to compensate Mr. Calamia for the wages he claimed. On May 23, 2017, Mr. Calamia initiated summary proceedings against Core Lab pursuant to the Louisiana Wage Payment Act, La. R.S. 23:631, et seq. , seeking unpaid wages, penalty wages, attorney fees, and costs.
In his Motion for Summary Relief, Mr. Calamia asserted that at the time of his discharge, Core Lab owed him for 73.8 hours of unpaid wages at his regular pay rate of $24.00 per hour, totaling $1,808.16. He contended that those wages included 7 hours of time entry wages, 16 hours of holiday pay, 49 hours of accrued Personal Time Off ("PTO"), and 3.34 hours of accrued sick leave, referred to as Extended Illness Bank ("EIB"). Mr. Calamia asserted that Core Lab failed to timely pay him these wages which were due under the terms of his employment, in violation of La. R.S. 23:631(A)(1)(a). Thus, he argued that he was entitled to not only the unpaid wages, but also ninety days of penalty wages pursuant to La. R.S. 23:632(A).
Core Lab filed a memorandum in opposition to Mr. Calamia's claims, asserting that Core Lab had paid Mr. Calamia all of the wages to which he was entitled under the terms of his employment. It argued that Mr. Calamia used all of his PTO time, was paid for all time entry wages and holiday wages, and was not entitled to wages for any remaining EIB hours following his termination pursuant to company policy. Core Lab further argued that no penalty wages were due, because no wages remained outstanding and, even if they had been, there was a good faith dispute as to whether wages were owed.
On July 24, 2017, this matter came for hearing before the trial court. At the hearing, Mr. Calamia testified that he began working for Core Lab in the position of Inspector II on January 25, 2016. Because he was a student with classes during the week, he was scheduled to work only on Fridays, Saturdays, and Sundays. Mr. Calamia testified that he was guaranteed to receive pay for 40 hours per week, plus overtime and holiday pay. He also stated that he earned PTO, which accrued at a rate of 4.0 hours each bi-weekly pay period, and EIB, which accrued at a rate of 1.54 hours each bi-weekly pay period.
According to Mr. Calamia, during his employment, he decided to get treatment for a medical condition, so he consulted with his employer to make arrangements to take vacation (PTO) time. The medical procedure took place on or about October 25, 2016, which was a weekday, and he was scheduled to take PTO for the following weekend work days. Mr. Calamia testified that the pain from the procedure was worse than he had anticipated, so he asked for the second weekend off as well. Mr. Calamia provided Core Lab with a document *1041 from his doctor indicating that he was released to return to work as of November 7, 2016, but it did not indicate whether he could return to work with or without restrictions. Core Lab indicated that it would need this information regarding any restrictions before allowing Mr. Calamia to return to work.
Core Lab placed Mr. Calamia on a medical leave of absence, pursuant to the company policy, which provided that an employee would be placed on medical leave if he was to be absent from work "for more than seven (7) calendar days necessitated by physical incapacity to work for any reason." Mr. Calamia obtained a second release to return to work from his treating physician, indicating that he could return without restrictions on November 19, 2016. Mr. Calamia testified that Core Lab returned him to active duty for payroll purposes as of that date; however, Core Lab informed him that it would not allow him to physically return to work "in the field" until he was cleared by a company physician. Core Lab terminated Mr. Calamia's employment after he tested positive for two controlled substances during a drug screen, and he never physically returned to work for Core Lab.[1]
There are three bi-weekly pay periods that are relevant in this matter.[2] They are the pay periods from: October 22, 2016 through November 4, 2016 ("Period 1"); November 5, 2016 through November 18, 2016 ("Period 2"); and November 19, 2016 through December 2, 2016 ("Period 3"). Mr. Calamia testified regarding the pay statements submitted for these time periods. He asserts that these statements show he is entitled to the compensation he seeks for unpaid wages.
At trial, Cheryl Watson testified for the defense. She stated that she is the Payroll Manager for Core Lab and is responsible for reconciling and approving the payrolls. She agreed that under the terms of Mr. Calamia's employment, he was scheduled to work or to be on call each week from 6:00 a.m. on Friday until 6:00 a.m. on Monday. She stated that he was guaranteed payment for 40 hours each week if he was available and fit for duty. However, Ms. Watson testified that he was not guaranteed 40 hours of pay during weeks when he was on medical leave, and he did not accrue PTO or EIB during weeks that he was on medical leave.
Ms. Watson also testified regarding Core Lab's payroll procedure, wherein Core Lab initially pays the employee a full 80-hour bi-weekly paycheck before receiving the employee's time sheet for that time period. Then, once the time sheet is received, there is a reconciliation on the next pay statement to account for the hours *1042 actually worked during the prior period. After being asked by the trial court, Ms. Watson agreed that there is a "two-week lag" between the time card and the reconciliation on the pay statement. Ms. Watson testified about the information on Mr. Calamia's pay statements for the three pertinent time periods, and she explained the discrepancies in the statements that were later reconciled.
After hearing the testimony of Mr. Calamia and Ms. Watson, and considering the exhibits admitted into evidence, the trial court rendered judgment in favor of Core Lab, dismissing Mr. Calamia's claims for unpaid wages. Mr. Calamia appeals.
LAW AND DISCUSSION
An appellate court may not set aside a trial court's factual findings unless they are clearly wrong or manifestly erroneous. Rosell v. ESCO , 549 So.2d 840 (La. 1989). If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse, even if it would have viewed the evidence differently as the trier of fact. Rodriguez v. Green , 12-98 (La. App. 4 Cir. 6/20/12), 111 So.3d 1, 3.
The Louisiana Wage Payment Act, La. R.S. 23:631, et seq. , is designed to compel the prompt payment of earned wages upon an employee's discharge or resignation. Davis v. St. Francisville Country Manor, L.L.C. , 13-190 (La. App. 1 Cir. 11/1/13), 136 So.3d 20. La. R.S. 23:631 provides, in pertinent part:
A.(1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
Thus, within fifteen days of Mr. Calamia's termination, Core Lab was required to pay him "the amount then due under the terms of employment," pursuant to La. R.S. 23:631(A)(1)(a).
Mr. Calamia contends that Core Lab failed to pay him all the wages that were due to him under the terms of his employment for time entry wages, PTO or vacation time, EIB or sick leave, and holiday pay. The burden of proof rests upon the employee to show by a preponderance of the evidence the facts which establish his claim for wages and penalties under La. R.S. 23:631 and 23:632. Bell v. Rimkus Consulting Group, Inc. , 09-343 (La. App. 5 Cir. 1/12/10), 31 So.3d 446, 452, writ denied , 10-325 (La. 7/2/10), 39 So.3d 587.
In his first assignment of error, Mr. Calamia asserts that the trial court erred in determining that no compensation was due for time entry wages at the time his employment was terminated. He contends that the evidence clearly shows that there was a payroll deduction for 7 hours of time entry wages on the pay statement for Period 2, for which Core Labs could not account.
Based on our review of the record, we find no manifest error in the trial court's finding that Mr. Calamia did not meet his burden of proving that Core Lab owed him 7 hours of time entry wages upon termination of his employment.
The pay statement for Period 2 indicates that it was for the pay period from November 5, 2016 through November 18, 2016. However, as explained by Ms. Watson, the hours shown on each pay statement were a reconciliation of the hours from the previous pay period. Thus, the pay statement for Period 2 actually covered hours worked or time taken during Period 1, October 22, *1043 2016 through November 4, 2016. Mr. Calamia worked on October 22, 2016, and he was available for work on October 23, 2016, but he did not work for the remainder of this pay period. The time sheet for Period 1 indicates that Mr. Calamia worked 21 hours, was available for 8 hours during which no work was available, and he requested to use 29 hours of EIB and 19 hours of PTO, for a total of 77 hours. In accordance with Core Lab's payroll process, although he only worked two days, Mr. Calamia was paid for 80 hours of work on the Period 1 pay statement. The PTO and/or EIB time taken during Period 1 was to be reconciled in the pay statement for Period 2.[3]
The pay statement for Period 2 reflects that Mr. Calamia used 29 hours of EIB and 19 hours of PTO. This corresponds with the time sheet for Period 1, which indicates that Mr. Calamia used 29 hours of EIB and 19 hours of PTO. The pay statement for Period 2 also reflects a deduction of 7 hours in time entry wages. Mr. Calamia argues that Core Lab was unable to explain this improper deduction of 7 hours. However, Ms. Watson testified that Mr. Calamia only had 41 hours combined of EIB and PTO hours to use at that time. She stated that because the total PTO and EIB hours put on the time sheet for Period 1 was 48 hours, but he only had 41 hours available to use, the reconciliation required a deduction of 7 hours in time entry wages on the pay statement for Period 2.
Mr. Calamia argues that the pay statement for Period 1 shows that he had more than 48 hours of PTO and/or EIB time to use, and thus, 7 hours should not have been deducted from the 48 hours of EIB and PTO time. However, Ms. Watson explained the reconciliation of the pay statement with the prior time sheet. A review of the time sheets and pay statements supports Ms. Watson's testimony regarding the reconciliation procedure and the number of hours available for PTO and EIB. The trial judge apparently gave credence to Ms. Watson's testimony. The trial judge stated that based on the testimony, along with the pay stubs and time sheets, he believed that, if anything, Mr. Calamia was "over paid by approximately three hours of actual regular hour wages."
Considering the testimony and evidence, we cannot say that the trial court manifestly erred by finding that Mr. Calamia was not entitled to compensation for 7 hours of time entry wages at the time of his termination. This assignment of error is without merit.
In his second assignment of error, Mr. Calamia contends that the trial court erred in determining that no wages were due for holiday pay at the time his employment was terminated. He argues that the evidence clearly showed that he met all of the requirements of Core Lab's policy for earning 16 hours of holiday pay for the Thanksgiving holidays, November 24-25, 2016, during Period 3, but he was never paid for these hours.
Mr. Calamia cites the policy on holiday pay set forth in Core Lab's handbook, which provides, "[i]n order to be eligible to receive holiday pay, non-exempt employees must have received full pay for the last scheduled workday preceding and the workday following the holiday." Mr. Calamia admits that he did not work at Core Lab from October 24, 2016 through the date of his termination, including either of the two days designated as Thanksgiving *1044 holidays. However, he claims that he was entitled to receive 16 hours of holiday pay, because he received full pay for the last day he was scheduled to work prior to the holiday and for the workday following the holiday. He asserts that Core Lab's policy does not require that he actually work on those days.
Core Lab does not dispute that Mr. Calamia met the eligibility requirements for holiday pay set forth in Core Lab's Employee Handbook and that he was entitled to 16 hours of holiday pay. However, it contends that Mr. Calamia did, in fact, receive the 16 hours of holiday pay and was not due any additional compensation.
Although Mr. Calamia did not physically work at all during Period 3, November 19, 2016, through December 2, 2016, he was returned to "active status" in Core Lab's payroll system on November 21, 2016. In his final paycheck for Period 3, Mr. Calamia was paid for 80 hours of work, which, according to Core Lab, included 16 hours of holiday pay.[4] Cheryl Watson testified that if Mr. Calamia had actually worked on the holidays, he would have been paid for those work hours plus the 16 hours for the company holiday. However, because he did not work on the holidays themselves, he was just paid for the 16 hours of the company holiday, which was included in his paycheck for a full 80 hours.
Both Mr. Calamia and Core Lab agree that Mr. Calamia was entitled to 16 hours of holiday pay for the two Thanksgiving holidays. They disagree, however, as to whether he was actually paid for these holidays. At the conclusion of the hearing, the trial court found that no additional holiday pay was due, because Mr. Calamia received full pay during that period of time and was not deducted any amount for not actually working on the holidays. He stated, "[h]e simply was not paid anything extra for the holidays."
Considering the testimony and evidence, we find no manifest error in the trial court's determination that at the time of his termination, no wages were due for holiday pay. Mr. Calamia was paid for 80 hours of work in his final paycheck, and the trial court did not err in finding that the 16 hours of holiday pay were included in this check. Accordingly, this assignment of error is without merit.
In his third assignment of error, Mr. Calamia asserts that the trial court erred in determining that no wages were due for PTO time at the time his employment was terminated. He argues that the evidence clearly showed that he had earned and accrued 49 hours of PTO time, for which he was never paid. He argues that Ms. Watson testified that he had 60 hours of PTO as of October 21, 2016, and there is no evidence that he was ever paid for these 60 hours.
The pay statement for Period 1 indicates that Mr. Calamia had a balance of 64 PTO hours. Ms. Watson testified that the indication that 4 hours of PTO was earned during that pay period was in error, because no PTO hours are earned while an employee is on medical leave. Thus, 60 hours of PTO were available at that time. The next pay statement for Period 2 indicates that 19 hours of PTO were taken, leaving a balance of 41 hours. The check for Period 2 includes payment for 41 hours of PTO time, leaving a balance of 0 hours.
*1045 Finally, Mr. Calamia notes that his final pay statement for Period 3 reflects that he still had a balance of 4 PTO hours. However, Ms. Watson testified that this was also in error, because PTO hours are not earned when an employee is on a leave of absence, and Mr. Calamia was still on a leave of absence at the beginning of this period. She testified that Mr. Calamia was not returned to active status until November 21, 2016, and the period began on November 19, 2016.
The November 18, 2016 pay statement supports the finding that Mr. Calamia was paid for 41 hours of PTO on that date. With regard to the four hours of PTO allegedly earned in Period 1 and again in Period 3, the trial court did not find that Mr. Calamia was entitled to those hours, as he was on a leave of absence for part of each period.
The trial judge stated that he found it "fairly clear that Mr. Calamia received full benefit of all PTO accrued hours during the course of his employment with Core." Based on the testimony and evidence presented, we cannot say that the trial judge erred by finding that Mr. Calamia did not prove he was entitled to compensation for any PTO hours. Accordingly, this assignment of error is without merit.
Mr. Calamia's fourth, fifth, and sixth assignments of error all pertain to his claim for EIB wages and can be considered together. In these assignments, Mr. Calamia argues: 1) the trial court erred in determining that no wages were due for EIB time at the time his employment was terminated; 2) the trial court erred in its interpretation of the law as it applies to whether earned and accrued EIB time constitutes wages under the Louisiana Wage Payment Act; and 3) the trial court erred in its failure to find that Core Lab's policy that divests an employee of his earned and accrued EIB time upon termination is unlawful under La. R.S. 23:634.
Mr. Calamia contends that at the time of his termination, he was owed wages for 3.34 hours of accrued EIB time. He asserts that this figure is the sum of the stated balance of EIB hours on his final pay statement (0.23 hours), EIB time that was miscalculated over the course of his employment with Core Lab (0.3 hours), 1.54 hours he should have earned during Period 1, and 1.54 hours he should have earned during Period 3. He claims that he earned and accrued these hours, but was never paid for them. Core Lab disputes Mr. Calamia's claim as to the balance of EIB hours at the time of his termination and argues that even if there had been a balance of EIB hours when Mr. Calamia was terminated, no EIB wages were due at termination pursuant to Core Lab's policy.
The employee handbook specifically provides that "[e]mployees will not accrue EIB time while on a leave of absence." Mr. Calamia argues that he worked some days during Period 1 and was returned to active status for most of Period 3. Therefore, he claims that he earned 1.54 hours for Period 1, and 1.54 hours for Period 3. Ms. Watson testified that an employee is not eligible to earn EIB time if he is on a leave of absence at any time during the pay period. Thus, she indicated that Mr. Calamia did not earn 1.54 hours of EIB time for either Period 1 or Period 3.
The trial judge stated that, pursuant to Core Lab's policy, he did not believe that Mr. Calamia accrued any EIB time during Period 1 or Period 3. Considering the language of the policy provision, this determination by the trial judge was reasonable. Mr. Calamia was on a leave of absence for a portion of each of these pay periods and thus, he was not eligible to earn EIB time. Thus, the remaining *1046 amount of EIB hours in dispute is 0.26 hours.
The Core Lab handbook, for which Mr. Calamia signed an acknowledgement of receipt and agreed to its terms on January 25, 2016, specifically provides:
No EIB hours will be paid out upon termination from the Company.
Mr. Calamia acknowledges that the handbook states that no EIB is due upon termination of employment with the company. However, he argues that compensation for EIB time is considered wages due under the terms of employment, and he claims that the law prohibits a company from divesting an employee of his earned wages, pursuant to La. R.S. 23:634. La. R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
As noted by Core Lab in its brief, the trial judge did not state that accrued EIB time is never considered to be wages. When handing down his ruling, the trial judge found that even if Mr. Calamia did accrue EIB time, which was disputed, no cash value was ascribed to those benefits and thus no EIB wages were due at termination.
In support of his position that he is entitled to compensation for unused EIB time, Mr. Calamia cites Beard v. Summit Inst. of Pulmonary Med. & Rehabilitation , 97-1784 (La. 3/4/98), 707 So.2d 1233, wherein the Louisiana Supreme Court held that when an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is "due under the terms of employment" and constitutes wages under La. R.S. 23:631. The Court explained that La. R.S. 23:634 forbids an employer from requiring an employee to forfeit his "wages" upon resignation.
Mr. Calamia also cites Wyatt v. Avoyelles Parish School Board , 01-3180 (La. 12/4/02), 831 So.2d 906. In Wyatt , the employee adopted a "use it or lose it" policy with regard to annual leave or "vacation time." The Louisiana Supreme Court found that while the "use it or lose it" policy did not itself violate the provisions of La. R.S. 23:631 and La. R.S. 23:634, the failure to compensate an employee for unused vacation pay, which the employer's stated policy allowed him to accrue, was a violation. Wyatt , 831 So.2d at 915.
Finally, Mr. Calamia cites Wall v. Ascension Credit Union , 16-487 (La. App. 1 Cir. 6/29/16), 2016 WL 6473021 (unpublished), wherein the First Circuit found that the employer's policy, which sought to divest the employee of her accrued sick time upon termination for cause, was invalid pursuant to La. R.S. 23:634. In Wall , the Court found that the accrued sick time was substantially similar to accrued vacation pay and constituted wages and an "amount then due" under La. R.S. 23:631. Although the First Circuit found the particular employer's policy in Wall was invalid, it noted that La. R.S. 23:634 does not prevent an employer from restricting an employee's right to accrue annual leave or vacation pay, citing Wyatt . Rather, the statute generally provides that an employer must compensate an employee upon his termination for any unused vacation pay that the employer's policy has allowed him to accrue.
*1047 In support of its position that no EIB time was due to Mr. Calamia upon termination of his employment, Core Lab cites Jackson v. Housing Authority for the Parish of St. James , 05-665 (La. App. 5 Cir. 3/14/06), 926 So.2d 606. In Jackson , the trial court found that an employee was not due payments for accrued sick leave, based on the employer's policy that sick leave time was not payable upon termination. On appeal, this Court affirmed, finding that although the employer's policy allowed unused sick leave to accrue from year to year, the employee was not entitled to payment for unused sick leave upon termination, where the employer's policy manual specifically provided that an employee would not be entitled to pay for unused sick time. Jackson , 926 So.2d at 612.
Core Lab also cites Huddleston v. Dillard Department Stores, Inc. , 94-53 (La. App. 5 Cir. 5/31/94), 638 So.2d 383. In Huddleston , a case involving vacation time, this Court noted that while La. R.S. 23:634 generally prohibits an employer from withholding wages earned up to the time of discharge, the employer's policy of not paying for accrued vacation when an employee is discharged for cause did not violate La. R.S. 23:634. This Court noted that "[t]he rule in this circuit is that unused vacation pay is considered wages for purposes of [ La. R.S. 23:631 -634], unless the employer's established policy precludes such payments." Huddleston , 638 So.2d at 384.
In Tran v. Petroleum Helicopters , 00-51 (La. App. 3 Cir. 6/28/00), 771 So.2d 673, writ denied , 00-2886 (La. 12/8/00), 776 So.2d 463, a case involving sick leave pay, the employer agreed to pay the injured employee the difference between his worker's compensation benefits and his regular salary, in accordance with its policy, but there was no agreement between the parties that unused sick leave had any cash value. The Third Circuit found that the employee was not entitled to payment for his unused sick leave upon termination. The Court noted that in the absence of a lawful agreement to the contrary, an employer may limit and restrict the time, manner, and amount of sick leave payments which the employer provides. Because there was no agreement between the parties that unused sick leave had any cash value, the Court found that the employee was not entitled to payment for unused sick leave pursuant to the terms of his employment. Tran , 771 So.2d at 677.
In the present case, when rendering his decision, the trial judge stated that he did not believe that any EIB wages were due, noting that the company policy, to which Mr. Calamia agreed, did not ascribe any cash value to EIB benefits. We find no error in the trial court's determination. In accordance with the law of this circuit, as well as the Third Circuit's decision in Tran , because no cash value was ascribed to the EIB time and the policy specifically provides that no EIB wages will be paid out upon termination of employment, Mr. Calamia has not shown that he is entitled to any compensation for unused EIB time. These assignments of error are without merit.
In his seventh and final assignment of error, Mr. Calamia contends that the trial court erred in determining that no penalty wages or attorney fees were warranted under La. R.S. 23:632, when the evidence clearly showed that he had earned or accrued wages that were due at the time his employment was terminated and Core Lab failed to pay these wages within the time limits set forth in La. R.S. 23:631.
La. R.S. 23:632 provides for the assessment of penalties and attorney fees against an employer for failure to comply with the provisions of La. R.S. 23:631 pertaining to payment of wages due at the *1048 time of termination of employment. Leftwich v. New Orleans Weddings Magazine, Inc. , 14-547 (La. App. 5 Cir. 11/25/14), 165 So.3d 916, 923. To recover penalty wages and attorney fees pursuant to La. R.S. 23:632 for an employer's failure to pay wages owed to a former employee, the employee must prove: 1) the wages were due and owing; 2) demand for payment was made at the place where he was usually paid; and 3) the employer failed to pay following the demand. Bell , 31 So.3d at 452.
In the present case, we have found that the trial court did not err in finding that Mr. Calamia was not entitled to any unpaid wages. Accordingly, because Mr. Calamia did not prove that any wages were due and owing, he is not entitled to penalty wages or attorney fees under La. R.S. 23:632. This assignment of error is without merit.
In its appellee brief, Core Lab contends that Mr. Calamia's appeal is frivolous, thereby warranting an award to Core Lab for the attorney fees and costs associated with this appeal, under La. C.C.P. art. 2164. However, Core Lab did not file an answer to the appeal seeking additional attorney fees. The failure either to cross-appeal or to answer the appeal precludes this Court from considering Core Lab's request for attorney fees. See La. C.C.P. art. 2133 ; Petrie v. Michetti , 10-122 (La. App. 5 Cir. 1/11/11), 59 So.3d 430, 441 ; Vicknair v. St. James Parish School Bd. , 06-381 (La. App. 5 Cir. 10/31/06), 945 So.2d 116, 119 ; Franks v. Royal Oldsmobile Co. , 605 So.2d 633, 635 (La. App. 5 Cir. 1992).
DECREE
For the foregoing reasons, we affirm the trial court's judgment dismissing all of Mr. Calamia's claims against Core Lab for unpaid wages.
AFFIRMED

Mr. Calamia contends that he was on prescription medication and could have provided the required prescriptions to Core Lab if they would have informed him of the substances for which he tested positive. Although Mr. Calamia claims that his employment was wrongfully terminated, he has not challenged the propriety of his termination in this proceeding. Rather, the issue in this matter is whether any unpaid wages were due to Mr. Calamia at the time his employment was terminated.

Mr. Calamia claims that there were also minor miscalculations in his pay during previous pay periods. We note that while Mr. Calamia attached to his Motion for Summary Relief several pay statements from pay periods prior to October 2016, he did not introduce these documents into evidence. Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Denoux v. Vessel Mgmt. Services, Inc. , 07-2143 (La. 5/21/08), 983 So.2d 84, 88. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Id. ; Scheuermann v. Cadillac of Metairie, Inc. , 11-1149 (La. App. 5 Cir. 5/31/12), 97 So.3d 423, 427.

Ms. Watson testified that Mr. Calamia was actually paid for three additional hours of work, since he was paid for 80 hours but the time entry, EIB, and PTO hours totaled only 77 hours.

Mr. Calamia's pay statement for Period 3 initially indicated that he was not entitled to any pay for that period, since his PTO had been exhausted. However, after payroll was advised that he was returned to active status as of November 21, 2016, a second statement was issued reflecting that he was paid for 80 hours for Period 3.