DANIEL RUSSO AND REILLY CAVANAUGH

VERSUS

ONPATH FEDERAL CREDIT UNION

NO. 23-CA-537

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 840-579, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

May 29, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Scott U. Schlegel, and Timothy S. Marcel

**AFFIRMED**
 **TSM**
 **JGG**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DANIEL RUSSO AND REILLY CAVANAUGH
    Michael E. Lillis
    Lawrence J. Centola, III

COUNSEL FOR DEFENDANT/APPELLEE,
ONPATH FEDERAL CREDIT UNION
    Susan F. Desmond

**MARCEL, J.**

In this suit arising from a Petition for Wages, Penalties, and Attorney's Fees Pursuant to La. R.S. 23:631 *et seq.* and an Alternative Petition for Damages, plaintiffs Daniel Russo and Reilly Cavanaugh appeal a judgment of the trial court dismissing their claims against their former employer, OnPath Federal Credit Union. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

In January 2022, OnPath enacted a Commercial Lending Incentive Plan for the four-member commercial lending team in order to grow OnPath's commercial loan portfolio during the 2022 fiscal year. Mr. Russo was leader of the four member commercial lending team, which included Mr. Cavanaugh. Under this plan proposed by Mr. Russo, the commercial lending team would receive incentive payments at the close of the 2022 fiscal year if certain deliverables were met. The plan was memorialized in a two-page document signed by both the Chief Executive Officer, Jared Freeman, and the Chief Operating Officer, Kristen DeDual. This document described the goals to be met for the team incentive to be payable, the team incentive formula, and an illustrative example for calculating the team incentive formula.

Over the course of 2022, the team grew OnPath's portfolio and met and exceeded the goals specified in the incentive plan. In November of 2022, Mr. Russo engaged in conversations (both in person and via email) with Ms. DeDual concerning the anticipated team incentive plan payment.[1] Using the example contained in the plan document, Mr. Russo calculated the anticipated payout to be approximately $1,195,412.56 for the team or $298,853.14 for each of the four team members. Ms. DeDual argued the example did not accurately apply the formula

---

[1] Some of these conversations were recorded by Mr. Russo. Audio and transcripts of those conversations were introduced as evidence at the hearing.

1

recited in the plan document. According to Ms. DeDual calculations, the team incentive payout for individual members would be closer to $50,000.00 each. Later recalculations determined each team member would receive $31,279.09. OnPath paid each commercial team member this amount, despite a written request in January 2023 for each team member to be paid $298,853.14.  On March 9, 2023, OnPath terminated Mr. Russo and two members of the commercial lending team resigned, including Mr. Cavanaugh.

On May 10, 2023, Mr. Russo and Mr. Cavanaugh filed a Petition for Wages, Penalties, and Attorney's Fees pursuant to the Louisiana Wage Payment Statute, La. R.S. 23:631, *et seq.* and, alternatively, a Petition for Damages alleging claims for breach of contract, detrimental reliance, and unjust enrichment. Plaintiffs elected to proceed on their claims for lost wages via summary proceedings, as is permitted under La. R.S. 23:631(B).  On May 11, 2023, the trial court issued a Rule to Show Cause why plaintiffs' Petition for Wages, Penalties, & Attorney's Fees Pursuant to La. R.S. 23:631 *et seq.* should not be granted.

A trial on the wages claims was held on July 10, 2023, which included testimonial evidence from Mr. Russo, Ms. DeDual, and Mr. Freedman, as well as documentary evidence.  At the conclusion of arguments, the trial court found that the amount in dispute was not an amount due under the terms of the Incentive Plan, but rather it was an incentive amount that would only be paid if there was growth and profit.  On that basis, the trial court denied plaintiffs' La. R.S. 23:631 claims and also denied plaintiffs' claims for breach of contract, detrimental reliance, and unjust enrichment. Plaintiffs' timely appeal followed.

On appeal, plaintiffs raise eight assignments of error.  We consider these *en globo* in our discussion below, with particular focus on the first two and most significant assigned errors: whether the trial court erred in ruling the amounts owed to Mr. Russo and Mr. Cavanaugh were not wages per La. R.S. 23:631, and whether

2

the trial court erred in its interpretation of the terms of the Incentive Plan concerning the calculation of wages owed.

## DISCUSSION

*"Wages" under La. R.S. 23:631*

The Louisiana Wage Payment Act, La. R.S. 23:631, *et seq.*, is designed to compel the prompt payment of earned wages upon an employee's discharge or resignation. *Calamia v. Core Labs., LP*, 17-635 (La. App. 5 Cir. 5/30/18), 249 So.3d 1038, 1042. La. R.S. 23:631 requires employers to pay employees the amount then due under the terms of employment no later than fifteen days from the date of the termination of employment. In the event the amount owed is disputed, La. R.S. 23:631(B) specifically grants the employee the right to file an action to enforce a wage claim and proceed via summary procedure under La. C.C.P. art. 2592. La. R.S. 23:632 states that employers who fail or refuse to comply with La. R.S. 23:631 shall be liable to the employee for penalty wages. La. R.S. 23:632(B) creates an exception to the payment of penalty wages for employers in situations where the court finds that an employer's dispute over the amount of wages due was in good faith. When a bona fide dispute exists over the amount of wages due, an employer's failure to pay is not an arbitrary refusal and no penalties will be awarded under the penalty wage statute. *Kaplon v. Rimkus Consulting Grp., Inc. of Louisiana*, 09-1275 (La. App. 4 Cir. 4/28/10), 39 So.3d 725, 733, *writ denied*, 10-1207 (La. 7/2/10), 39 So.3d 587. The burden of proof rests upon the employee to show by a preponderance of the evidence the facts which establish his claim for wages and penalties under La. R.S. 23:631 and 23:632. *Calamia*, *supra*.

Wages, though not defined in the statute, are equivalent to the amount then due under the terms of employment. *Boyd v. Gynecologic Associates of Jefferson Par., Inc.*, 08-1263 (La. App. 5 Cir. 5/26/09), 15 So.3d 268, 272. Wages include compensation that is earned during a pay period. *Boudreaux v. Hamilton Med.*

*Grp., Inc.*, 94-879 (La. 10/17/94), 644 So.2d 619, 622. Whether a bonus constitutes a "wage" under La. R.S. 23:632, *et seq.* is mixed question of law and fact generally reviewed under the manifest error standard. *Locke v. MADCON Corp.*, 22-630 (La. App. 1 Cir. 12/22/22), 360 So.3d 519, 526, *writ denied*, 23-95 (La. 4/4/23), 358 So.3d 866. Bonuses paid as part of an incentive plan to encourage longevity or production may be called "bonuses" but are more in the nature of commissions and are considered wages. *Kaplon*, *supra*. Commissions are considered wages for the purposes of La. R.S. 23:631-32. *Jeansonne v. Schmolke*, 09-1467 (La. App. 4 Cir. 5/19/10), 40 So.3d 347, 358.[2] If they are unpaid, the employee has a right to recover them as they do any other wage.

Upon examination of the record before us, we find that the trial court manifestly erred in determining that the payments owed under the Incentive Plan were not wages for the purposes of La. R.S. 23:631. Review of OnPath Federal Credit Union Commercial Lending Incentive Plan indicates that the team incentives would be paid provided the minimum goals were met. It is undisputed by the parties that the commercial lending team members, including plaintiffs, met the minimum goals specified in the incentive plan and therefore earned incentive payments. Under the definitions stated above, these payments are wages for the purposes of La. R.S. 23:631.

Nevertheless, for reasons articulated more fully *infra*, we find no manifest error in the trial court's determination that no additional wages beyond those already paid were owed to plaintiffs by OnPath under the terms of the Incentive Plan.

*Interpretation of the Incentive Plan*

---

[2] However, commissions generally are not to be used when determining an employee's daily rate of pay for calculating penalty wages under La. R.S. 23:632. *Harrelson v. UTC Labs., LLC*, 23-64 (La. App. 5 Cir. 11/2/23), 376 So.3d 1038, 1043.

4

Plaintiffs' claims for wages under La. R.S. 23:631 are inextricably linked to their claims for breach of contract because the contract at issue, the Incentive Plan, provides the basis for calculation of the wages owed. Whether the contract has been breached or honored by OnPath depends on the interpretation of the terms stated therein.

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. A contract or document is ambiguous when its written terms are susceptible to more than one interpretation, there is uncertainty as to its provision, or the parties' intent cannot be ascertained from the language used. *All Am. Healthcare, L.L.C. v. Dichiara*, 18-432 (La. App. 5 Cir. 12/27/18), 263 So.3d 922, 928 (citing *Leftwich v. New Orleans Weddings Magazine*, 14-547 (La. App. 5 Cir. 11/25/14), 165 So.3d 916, 921.) When the terms of a contract are susceptible to more than one interpretation, there is uncertainty as to its provision, or the parties' intent cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. *First Bank & Tr. v. Redman Gaming of Louisiana, Inc.*, 13-369 (La. App. 5 Cir. 12/12/13), 131 So.3d 224, 228. In this posture, determining the intent of the parties becomes, in part, a question of fact. *Id*.

The contract between the parties states in relevant part:

Team incentive:

- 5% of Net/ Net profitability to be paid out January of 2023 based on overall profitability at year end. Profitability ratios are calculated based on Weighted Average Rate net of Charge off, Operating Expense, Cost of Funds and Opportunity Cost
  o Goal is a minimum of 1.5% to earn incentive
  o Incentive calculated on 5% of the dollar amount over the 1.5% threshold

  Example: As of June; Goal is 1.5% (goal to reach threshold) Incentive pad on any amount over the threshold at 5% net/net (currently 1.5% of the portfolio is $981,731.63, therefore the portfolio would have to be at $66,430,506 to reach 1.5% threshold) 5% of any amount over that would be paid annually split evenly with all members of the Commercial team. (if [sic] you end the year with $68,000,000 in the portfolio which is above the

threshold of $66,430,506, the team would earn 5% on the difference which =$1,569,493 which would yield $78,475 in incentive to be split. Split 4 ways currently with the staff we have would be a $19,619 bonus each.)

The terms in this contract are ambiguous in that they are susceptible to different meanings that are conflicting. Because these terms are ambiguous and not defined in the agreement, the trial court was correct to consider extrinsic evidence from the parties concerning their meaning. The trial court considered conflicting testimony from Mr. Russo and Ms. DeDual concerning what the parties intended by using these terms in their agreement and made a factual determination that the calculations articulated by Ms. DeDual and OnPath best reflected the intent of the parties.

As noted above, this factual determination is subject to the manifest error standard of review. Under this standard, the trial court's finding of fact may not be set aside unless that finding is clearly wrong in light of the record reviewed in its entirety. *Palmisano v. Ohler*, 16-160 (La. App. 5 Cir. 12/7/16), 204 So.3d 1134, 1137. The issue to be resolved by this Court on review is not whether the judge was right or wrong, but whether the judge's fact-finding conclusion was a reasonable one. *Id*. Upon review of the record, we find no manifest error in the trial court's determination regarding the parties' intent under the terms of the Incentive Plan. As the trier of fact, the trial court is in the best position to weigh the credibility of the witnesses. *See Granger v. Christus Health Central Louisiana*, 12-1892 (La. 6/28/13), 144 So.3d 736, 756. As a consequence, we also affirm the trial court's decision to deny plaintiffs' wages claims (because no additional wages were owed) and to deny plaintiffs' claims for breach of contract.

*Detrimental Reliance and Unjust Enrichment*

Claims for detrimental reliance are governed by La. C.C. art. 1967 under which a party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the

6

other party was reasonable in so relying. To prove a claim for detrimental reliance, the plaintiffs must prove: (1) a representation by conduct or word, (2) justifiable reliance, and (3) a change in position to one's detriment because of the reliance. *Uddo v. Jefferson Par. Hosp. Serv. Dist. No.2*, 22-403 (La. App. 5 Cir. 4/12/23), 361 So.3d 1123, 1130, *writ denied*, 23-677 (La. 9/26/23), 370 So.3d 475. Claims of detrimental reliance must be examined strictly and carefully. *625 LaBarre Rd., LLC v. Par. of Jefferson*, 21-133 (La. App. 5 Cir. 11/3/21), 330 So.3d 1201, 1206. Detrimental reliance is not favored under Louisiana law, and failure of a plaintiff to prove each element of the claim will bar recovery. *Luther v. IOM Co. LLC*, 13-353 (La. 10/15/13), 130 So.3d 817, 825. The evidence in the record does not support the second element of plaintiffs' claims; there is no indication that either Mr. Russo or Mr. Cavanaugh justifiably relied on the representations made to their detriment. We affirm the decision of the trial court dismissing these claims.

Unjust enrichment requires a person who has been enriched without cause at the expense of another person to provide compensation to that person. La. C.C. art. 2298. The remedy of unjust enrichment is subsidiary in nature, and shall not be available if the law provides another remedy. *Semco, LLC v. Grand Ltd.*, 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1030, *writ denied*, 17-1291 (La. 11/6/17), 229 So.3d 475. Other adequate legal remedies are available in this case, and therefore the trial court was correct to deny plaintiffs' claims for unjust enrichment.

*Conclusion*

For the foregoing reasons, we find that the payments owed under the Incentive Plan are wages for the purposes of La. R.S. 23:631. Nevertheless, we find no manifest error in the trial court's determination that no additional payments are owed under the Incentive Plan. Further, plaintiffs' claims for detrimental

7

reliance and unjust enrichment were properly denied.  Accordingly, the judgment

of the trial court is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 29, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-537**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
LAWRENCE J. CENTOLA, III (APPELLANT)      MICHAEL E. LILLIS (APPELLANT)      SUSAN F. DESMOND (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED